## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### AUSTIN V. SANDERS.

#### January 24, 1918.

1. VENDOR AND PURCHASER—*Deficiency in Quantity of Land—Jurisdiction of Equity—Adequate Remedy at Law.*—Courts of equity have jurisdiction to render decrees for the value of the deficiency in the quantity of land sold by the acre. The basis of this jurisdiction is either mutual mistake, or the mistake of one party occasioned by the fraud or culpable negligence of the other. The jurisdiction being elementary, it is immaterial that the complainant has a complete and adequate remedy at law.

2. VENDOR AND PURCHASER—*Deficiency in Quantity of Land—Sale by Acre or in Gross.*—Complainant brought his suit in equity to recover for a deficiency in quantity of a tract of land sold by defendant to complainant. The tract of land in question had been placed in the hands of one L. for sale, who negotiated the sale to complainant and was complainant's partner in the purchase. The evidence did not show that there was any misrepresentation on the part of the defendant as to the quantity of land in the boundary conveyed. It appeared that all the misrepresentations with reference to the quantity of land were made by L., either before he became the agent of defendant, or at the time or after he became a partner of complainant, so that the latter misrepresentations were of one partner to another, for which complainant could not be held responsible. The deed was silent as to the quantity of land that was in the boundary, and the record did not show that defendant was responsible for the statements made by L. as to the quantity of land in the boundary.

*Held:* That the evidence did not show that the sale was expressly or impliedly a sale by the acre.

Appeal from a decree of the Circuit Court of Prince William county. Decree for defendant. Complainant appeals.

*Affirmed.*

27

The opinion states the case.

*E. Hilton Jackson* and *C. A. Sinclair,* for the appellant.

*Jno. M. Johnson* and *Thomas H. Lion,* for the appellee.

BURKS, J., delivered the opinion of the court.

This is a suit in equity to recover for deficiency in quantity of a tract of land sold by the appellee to the appellant. There was a demurrer to the bill on the ground that the complainant had a full, adequate and complete remedy at law and that a court of equity was without jurisdiction in the premises. The demurrer was properly overruled. Courts of equity have jurisdiction to render decrees for the value of the deficiency in the quantity of land sold by the acre. The basis of this jurisdiction is either mutual mistake, or the mistake of one party occasioned by the fraud or culpable negligence of the other. The jurisdiction being elementary, it is immaterial that the complainant has a complete and adequate remedy at law. *Hull* v. *Watts,* 95 Va. 10; *Blessing* v. *Beatty,* 1 Rob. (40 Va.) 316.

Upon the hearing on the merits, the bill of the complainant was dismissed, and from that decree this appeal was taken. The law relating to sales by the acre is well settled in this State, and is not controverted by the appellee, and hence need not be restated; but the appellee denies that the evidence in the cause makes out a case for the application of the law. The case, therefore, is narrowed down to an examination of the evidence to ascertain the facts. Numerous deeds and other documents were offered in evidence, but the appellant was the only one of the parties to the transaction who was examined as a witness in the case. Neither appellee nor J. W. Latham, who negotiated the sale

and was a partner in the purchase, was examined as a witness. The appellant files with his deposition a number of letters from Latham, but none of his own, so that his side of the correspondence can only be gathered from the replies made by Latham. Bearing this fact in mind, we shall endeavor to state the case as fairly as we can from the record.

Miss Mary Custis Lee was the owner of a tract of 1677 acres of land in Fairfax county, which was divided into three tracts containing upwards of five hundred acres each. A map of this and other parts of what was known as the "Ravensworth" lands was made by R. R. Farr, surveyor, and most of the conveyances of any part of "Ravensworth" refer to this map. Accotink Run ran through the lands of Miss Lee, and two of the subdivisions thereof, one containing 512 1/2 acres and the other 581 acres, lay east of the Run, and the remaining one, containing 583 acres, which is the land in controversy, lay west of said Run. The last mentioned tract came by mesne conveyances to Samuel L. Monroe and F. F. Marbury, who placed it in the hands of J. W. Latham, a real estate agent of Washington, D. C., for sale. Just how Latham first got the idea that the tract contained eight hundred acres is not clear, though at a later stage he tells how this idea was confirmed. After some negotiations he effected a sale to the appellee, Frederick H. Sanders. The deed to Sanders is dated July 31, 1913, and he gave back a deed of trust to secure $4,000 of purchase money. This deed was not acknowledged till August 15, 1913, and both deeds were recorded on September 4, 1913. Just when these deeds were delivered does not appear, but both were probably delivered the same day, on or after August 15, 1913. The deed from Monroe and Marbury to Sanders describes the land as "a part of Ravensworth estate, and assessed for taxation as 583 1/2 acres." Sanders evidently bought the land for speculative

purposes, and immediately (before his deed was recorded) put it into the hands of the same J. W. Latham for sale, who set to work to find a purchased. At this stage of the transaction he tells us why he thought the tract contained 800 acres. In July, 1914, he wrote to the appellant: "As to the 800 acres, I got that from Monroe himself, after the sale was made to Sanders. Monroe brought the original survey or tracing to me and showed me where there were 581 acres surveyed and stated, if there were 581 acres in that piece there were even more than 800 in the piece we bought; that I believe I showed you." This map or tracing seems not to have been drawn to scale, and hence the error in his deduction, although the deed to Sanders said that it was "assessed for taxation as 583½ acres." While Latham says that he got this information from Monroe after he sold to Sanders, which could not have been earlier than July 31, 1913, this is manifestly an error, for in a letter to the appellant dated June 30, 1913, at least a month before the conveyance to Sanders, he speaks of this land as "the 800-acre tract." Doubtless he conceived this idea of acreage by the comparison aforesaid, but he is manifestly in error as to the date of the conception. There is no evidence in the record that he had any other information that the tract contained 800 acres.

This tract of land was in the hands of J. W. Latham for sale as agent for Monroe and Marbury prior to the sale to Sanders, which latter was probably not consummated earlier than August 15, 1913. Prior to the latter date Latham had conceived the idea that this tract contained 800 acres, and he always spoke of it as "the 800-acre tract." It seems to have been first brought to the attention of appellant by Mr. Meschendorf, a friend of Latham, in June, 1913, a month and a half or two months before Sanders acquired title. It is also manifest that the land was being bought and sold for speculative purposes. The first cor-

respondence we have on the subject is a letter from Latham to appellant, dated June 30, 1913, in which he speaks of the land as "the 800-acre tract," and also of the reasons why he thinks the purchase was a good one. On that date he wrote the appellant:

"Mr. Meschendorf of Forest Depot, Virginia, with whom I co-operate in the sale of farms, writes me that you want some more information regarding the 800-acre tract I have for sale fourteen miles from the city.

"This is one of the great bargains we have, besides the land and timber, there is a fine water power on the place, which the Alexandria Lighting Company is contemplating buying, to supply the power for the electric plant in the town, the fuel for which now costs them $30,000 per year and there is no other power in existence that can be obtained. If you will come down and buy this place, I can make you some money. There is a splendid growth of young timber on this tract, which will be worth the price of the farm in a few years."

The next that we hear anything about this farm is in a letter from Latham to appellant, under date of August 18, 1913, in which he again speaks of this tract as "the 800-acre tract," and says further:

"You spoke as if you would buy it, if I would take half interest in it. I will do so, and put up one-half of the expense, and divide the profits equally, between us when sold; and should I bear all expense of showing the property to customers, advertising and so on, I will charge one-half commission or 2 1/2%.

"If you think well of this, come up and inspect as soon as possible and lets fasten it, or if you cannot get off right away, write me just when you can, and I will try to get him to hold it off."

The appellant, in his deposition admits that he and Latham were partners in the purchase, and in effect says that

he would not have purchased if Latham had not gone in with him. This partnership between Latham and the appellant must have been formed about that date. Presumably the letter of August 18, 1913, was taken as an acceptance of the proposition of appellant that Latham should go into partnership with him. The appellant states that he first came into personal relationship with Latham at his office in Washington in the latter part of August, 1913; so that this must have been after the partnership was formed. The appellant states that it was at this interview in his office in the latter part of August, 1913, that he was assured by Latham that there were 800 acres and probably more in the tract. As to the source of Latham's information as to the quantity of acres in the tract, the appellant was asked this question: "Did Latham ever state any reason why he made the statement that this tract of land contained 800 acres or more to you?" to which he replied: "He said the map showed a larger portion of it to No. 5 than it did to others. He showed me this was so." So it appears that Latham did not make any representation as the agent of Sanders that it was claimed or asserted by him that the land contained 800 acres, but that it was a deduction of his own from his examination of the map which he exhibited to the appellant, and it seems to have convinced him of the fact also as he states: "He showed me this was so." It is true that the appellant states that the representations made to him by Latham were made by him as the representative of Sanders, and "as no representative of mine," but it is a little difficult to understand how the appellant could discriminate between what representations were made by Latham as agent for Sanders and what as a member of the firm.

After the partnership was entered into, Latham, acting on behalf of himself and the appellant, entered into an agreement with Sanders to purchase the land, and prepared a memorandum of agreement, dated August 25, 1913, which

was subsequently signed by Sanders, in which it is stated that the land is "supposed to contain 800 acres." Latham seemed to be obsessed with the idea that there were 800 acres in the tract, and whenever he speaks or writes of it, it is always as "the 800-acre tract." The very first mention he made of it in his letter of June 10, 1913, he speaks of it as "the 800-acre tract."

The price of the tract was $12,000. Latham was to pay $4,000, the appellant $4,000, and they were jointly to pay the lien of $4,000 placed upon the land by Sanders. The land was conveyed directly to Austin by deed bearing date January 9, 1914. Latham's name was omitted from the deed because he stated that he could handle the land better if it stood in the name of the appellant only, but an agreement was entered into between the appellant and Latham on January 10, 1914, in which the land is again spoken of as "the 800-acre tract," by which Latham's interest in the land is fully and completely recognized, and by deed bearing date January 20, 1914, Austin conveyed to Latham an undivided one-half interest in the land. The reason for this will be stated later.

It will be observed that the contract of purchase bears date August 25, 1913, whereas the deed of conveyance was not made until January 9, 1914, so that the parties had ample time to examine the title and before the deed was made the appellant says that he asked for an abstract of title, and that Latham said that Howard Smith had passed upon the title and it was perfectly good. Latham, it will be observed, was a joint purchaser with appellant of this land, and if the title was examined by Smith, as stated by Latham, it disclosed the fact that the deed from Monroe and Marbury to Sanders described the land as "assessed for taxation as 583 1/2 acres," so that the parties were apprised before the transaction was concluded as to the real quantity of land in the boundary. They had both looked at the map, how-

ever, and drawn their own conclusions that there must be at least 800 acres in the tract, but for that the appellee was in no wise responsible.

After this transaction was closed by the deed from Sanders to Austin, it appears that Latham became very much interested in a coal mine in Kentucky, and was putting all the money he could get into that venture. He got the appellant to convey to him a one-half interest in the land, as agreed upon, and soon thereafter placed a deed of trust upon his half interest to secure a loan for $6,000. He wrote to appellant, assuring him of the value of the land by the fact that he had been able to place a loan of $6,000 on half of it, subject to the encumbrance of $4,000, after the parties who made the loan had inspected the premises.

Latham made default in the payment of his part of the $4,000 encumbrance placed upon the land by Sanders, and the land was sold by the trustee in the Sanders deed to enforce the lien thereof, and at that sale the appellant became the purchaser at the price of $3,865, and thereby acquired title to the whole tract; discharged not only of the Sanders deed of trust but of the deed which Latham had placed on his half of the land. Austin then brought this suit for the recovery of the deficiency in the quantity of land. The deed from Sanders to Austin, it will be remembered, does not state the quantity of land in the tract. Austin, in his petition for appeal in this case states that he does not claim under the agreement of August 25, 1913, in which it is said that the tract is supposed to contain 800 acres, but under the deed in which no quantity is stated. His position on this subject is probably better stated in his own language.

"Some inquiry was made at the hearing as to whether the complainant was suing upon the deed of January 9, 1914, or upon the agreement of August 25, 1913. A very casual analysis of the bill demonstrates that the suit is based upon a failure of consideration, to-wit, the non-ex-

istence of two hundred and twenty (220) acres conveyed by the deed when interpreted by the well known rule, 'light of surrounding circumstances' rule. There are two sufficient reasons why an action of this sort could not be brought under the agreement of August 25, 1913, the first being that both Latham and Austin would have to be parties to such a suit and the second being that, the contract in question being executory, would only furnish the basis for a suit for specific performance or a suit for damages brought in the name of both Latham and Austin for failure to perform, if they so elect. On the other hand, the deficiency which is the subject of the suit at bar, grows out of an executed contract, the full purchase price having been paid and, in view of the statute of frauds, the only party who could sue for such deficiency is the party named in the contract, to-wit, Austin. Further argument would be superfluous to demonstrate to the court what was conceded to be law at the hearing, namely, that the deed must be interpreted as to the area of the property by what the parties had in mind before and at the time the deed was delivered, to-wit, eight hundred (800) acres. The evidence overwhelmingly shows that this amount was in the minds of both parties at the time the deed was executed and delivered, and induced Austin to agree to pay the purchase price of twelve thousand ($12,000.00) dollars for the eight hundred (800) acres."

We are of opinion that the evidence does not show that there was any misrepresentation on the part of the appellee as to the quantity of land in the boundary conveyed; that all the misrepresentations that were made by Latham with reference to the quantity of land were made either before he became the agent of Sanders, or at the time or after he became a partner of appellant; that the latter were misrepresentations of one partner to another, for which the appellee is not responsible; that the deed was silent as to the quantity of land that was in the boundary; and that the

record does not show that Sanders was responsible for the statements made by Latham as to the quantity of land in the boundary; and that the sale was not expressly or impliedly a sale by the acre.

For these reasons, we are of opinion that the decree of the circuit court should be affirmed.

*Affirmed.*

Sims, J., dissenting:

I regret to say that I cannot concur in the majority opinion or in its results. It places the conclusion to affirm the decree complained of upon two grounds:

1. Because the evidence does not show that there was any misrepresentation on the part of the appellee as to the quantity of land.

2. Because the evidence does not show that the sale was expressly or impliedly a sale by the acre.

1. As to the second ground referred to (which will be first considered) :

Since the opinion of this court delivered by Judge Baldwin in the leading case on this subject in Virginia of *Blessing* v. *Beatty*, 1 Rob. (40 Va.) 287, it has been the settled rule in this State, followed by an unbroken line of decisions, that, where the contract of sale refers to the number of acres of the land, although a price in gross for the whole of the land is stated and nothing is said in the contract as to the sale being by the acre, it is presumed to be a sale by the acre, unless there is other and affirmative proof that the contract was one of hazard as to acreage and that the sale was expressly agreed to be in gross; and that the burden is always upon the party asserting the contract of hazard (which is not a contract which is favored in equity), to prove an express contract of a sale in gross; and the latter must be clearly established by the facts before the court will so hold. *Blessing* v. *Beatty, supra; Crawford* v. *Mc-*

*Daniel,* 1 Rob. (4 Va.) 448; *Jackson* v. *Ligon,* 3 Leigh (30 Va.) 161; *Benson* v. *Humphreys,* 75 Va. 198; *Berry* v. *Fishburne,* 104 Va. 459; *Watson* v. *Hoy,* 28 Gratt. (69 Va.) 696, 698; *Emerson* v. *Stratton,* 107 Va. 303, 307; *Pack* v. *Whitaker,* 110 Va. 122—to cite only a few of the cases on this subject.

In the cause before us the contract of sale, which was in the form of a statement in writing signed by the appellee and accepted by a memorandum at its foot signed by La-tham, acting for himself and appellant, was as follows:

"Memorandum of Agreement.
"Washington, D. C., August 25, 1913.

"I have this day sold to J. W. Latham, of Washington, D. C., and R. F. Austin, of Greenwood, Miss., all my tract of land, in Fairfax county, Virginia, lying on the south side of Accotink Run, one mile west of Pohick station, on the R. F. & P. R. R., formerly owned by Miss Mary Custis Lee, supposed to contain 800 acres, on the terms, to-wit; $500.00 cash, paid in hand, a receipt for which is hereby acknowledged, seven thousand five hundred ($7,500.00) January 10, 1914, and said Latham and Austin assume the present mortgage that is now on the place, of four thousand dollars ($4,000.00) payable as follows: ($1,000.00) one thousand dollars, on August 2, 1914, one thousand dollars ($1,000.00) dollars on August 2, 1915, and balance of ($2,-000.00) dollars August 2, 1916. A full settlement of all interest and taxes, etc., and a general warranty deed given on January 10, 1914.

"Witness my hand and seal this 29th of August, 1913."
        (Signed)      "Frederick H. Sanders (Seal)."

There was no evidence in the cause that there was any express agreement that the sale was to be in gross and not by the acre.

Under the rule in Virginia above referred to, therefore, the evidence in the cause shows that there was "impliedly" a sale by the acre,· and hence I cannot agree with the conclusion of Judge Burks on the second ground upon which he rests his opinion.

2. As to the first ground above referred to, on which the opinion of Judge Burks is based:

The same line of decisions in this State above referred to, and some of which are above cited, establish the doctrine that the principle on which equity grants the relief sought by the appellant in this cause is that of granting relief from the payment of. money induced by a *bona fide* mistake of. fact as to the quantity of· the land purchased. As said by Judge Baldwin in *Blessing* v. *Beatty,* ·*supra*: "The principle upon which equity gives relief in cases of deficiency  *   *   * in the estimated quantity upon the sale of lands, I understand to be that of mistake; whether the mutual mistake of the parties or the mistake of one of them occasioned by the fraud or culpable negligence of the other. I do not perceive any other principle upon which the jurisdiction can be founded `*   *   *"` The mistake of the vendee and plaintiff in such a case may or may not have been induced by the misrepresentation, fraud or culpable negligence of the vendor. If it was induced by a mutual mistake, both of vendor and vendee (as indeed is stated by the majority opinion in the outset of it as well as in Judge Baldwin's opinion above quoted), the vendee plaintiff is entitled to the relief of recovery back of so much money as he may have been induced to pay to or for the vendor, by such mistake of fact existing on the part of the vendee. The gravamen of such a case and the only essential thing to entitle the vendee plaintiff to relief is that he paid the money under a *bona fide* mistake of fact as to the quantity of the land, when the sale was a sale by the acre and not one of hazard (not a sale in gross), as aforesaid.

Whether the mistake of appellant was induced by any misrepresentation of the appellee, therefore, is immaterial. If the truth was that Latham first conceived the mistaken idea that there was 800 acres in the tract of land and that his mistake was induced by the Accotink Run not being laid down accurately on the map of the "Ravensworth" lands made by R. R. Farr, surveyor, and even if Latham communicated this obsession of his to the appellee (as he did undoubtedly to the appellant), all of this, as I view the matter, was immaterial. The fact remains, that however induced, at the time the appellee signed the contract aforesaid, and it was entered into by appellant; and at the time the appellant paid the first $4,000 paid by him; at the time the deed to appellant from appellee was delivered; and at the time appellant subsequently paid the second $4,000 and interest and expenses presently to be mentioned; both appellee and appellant were acting under the honest mistake that said land contained 800 acres, when in fact it contained a substantially less quantity, to-wit, only 580.22 acres and Latham also acted under the same honest mistake of fact. There is no suggestion by the evidence in the cause of any conscious misrepresentation or fraud on the part of any one.

That the appellee acted under said honest mistake of fact, is conclusively proved to be a fact by the contract of sale above quoted, signed by him, in its reference to the land as "supposed to contain 800 acres." (Indeed, if any representation as to quantity from appellee was necessary, here was a representation directly by him to appellee, and in writing, in the very contract of sale itself. That the contract was drawn by some one else, is of course immaterial. The reference in the contract of sale to the "supposed" quantity of the land, is however material, as evidence of the quantity of land which is presumed, under the rule above referred to, to have been in the minds of the contracting

parties and to have fixed the total purchase money upon a
computation based on a sale by the acre.)    That Latham
may have before the date of such contract made the same
representation to appellant, is in my view of the case wholly
immaterial, or in what capacity Latham was then acting,
whether as agent for the appellee or as a partner of ap-
pellant.   The ultimate fact, as shown by all of the testimony
in the cause, and about which there is no suggestion of any
doubt anywhere, or on the part of any party in interest, is
that the appellant acted under the honest and *bona fide,* al-
though mistaken, belief that there were 800 acres of the
land when he paid that portion of the purchase money which
was paid by him therefor; and that the appellee acted under
the same mistake of fact when he received that portion of
the purchase money which appellant paid him directly and
when he took appellant's obligation as to the assumption
of the $4,000 mortgage or deed of trust on the land to be
paid for appellee, which eventually resulted in the sale of
the land thereunder and the further payment of purchase
money for said land made by appellant for appellee.

Accordingly, under said contract, appellant, on or before
January 9, 1914, paid to the appellee $4,000 or one-third of
the purchase money.   Latham paid the like portion of the
purchase money on or before January 9, 1914, or it was
"settled" between Latham and appellee.   This left a re-
mainder of one-third of the purchase money unpaid, being
the $4,000 covered by the mortgage or deed of trust debt
mentioned in said contract, the payment of which was as-
sumed by Latham and appellant.   Subsequently appellant,
on August 2, 1914, paid $500 on the principal of said $4,000
remainder of purchase money and $60 on account of inter-
est on the $4,000 for one year.   Latham defaulted in the
payment of his part of such remainder due August 2, 1914,
and in November, 1914, the land was sold under the mort-
gage or deed of trust aforesaid and was bought in by ap-

pellant for the amount of the balance of said $4,000 remainder of purchase money (and interest to that date) then still unpaid, and expenses of sale, aggregating $3,865. That is to say, by his purchase at said sale and the payments made by him prior thereto aforesaid, appellant paid two-thirds of the purchase money of $12,000 for said land, and about $129.80 in excess thereof, expenses of said sale, all under the mistaken belief that he was getting at least 800 acres of land.

The evidence in this cause established beyond all question, therefore, that the appellant thus paid two-thirds of said purchase money under an honest mistake as to the quantity of said land. By actual survey in June, 1915, the quantity of the land was ascertained to be 580.22 acres, or a shortage of 219.78 acres was found to exist of the supposed quantity of 800 acres, as stated in the contract of sale aforesaid. If there were no facts with respect to buildings on the land or other circumstances to disturb the average price per acre (and there is no suggestion thereof in the record), the contract price of the land (supposed to be 800 acres at $12,000) was $15 per acre. The shortage of 219.78 acres at $15 per acre would amount to $3,296.78. As appellant paid two-thirds of the contract price for the land to and for the appellee under the mistake aforesaid (not computing the expenses of sale aforesaid paid by him, with which appellee should not be chargeable), the appellant paid for two-thirds of said 219.78 acres shortage of land, and is entitled to recover of the appellee two-thirds of said $3,296.78, or the sum of $2,197.80, with legal interest on $68.68 parcel thereof from August 29, 1913; on $1,030.22 parcel thereof from January 9, 1914; and on $1,-098.90, the residue thereof, from November . . . ., 1915 (the day of sale under said deed of trust) until paid, and the costs of suit in the court below and upon this appeal.

Latham paid for one-third of said shortage of land, but he is not a party before the court seeking to recover for such

payment. It is true that appellant claims to be entitled to such recovery also, but no principle is perceived upon which such a recovery by appellant could be allowed. The principle on which relief is granted in such cases, above stated, does not apply to such a recovery by appellant, who did not pay such money.

It should perhaps be further stated that it is true, as mentioned in the majority opinion, that the deed from appellee to appellant omits any statement of the acreage of the land. But there is no suggestion in the record that this omission was caused by any change in the supposition or belief of the vendor and vendee that the land contained 800 acres at least. Such omission, therefore, can have no effect to prove an express contract of hazard or of a sale in gross. At most the deed was merely silent as to what the contract was as to acreage, and gave no covenant of warranty as to the quantity of acreage on which an action of covenant would lie. But since this case is not an action of covenant, the silence of the deed on this point is immaterial. The deed does not supersede the contract of sale as to the supposed quantity of the land by stating that a different quantity from that named in the contract is conveyed; but uses language which would operate to convey the land whatever in fact might be the acreage, whether in excess of the contract quantity or less than that quantity.

For the foregoing reasons I am of opinion that the decree complained of should be reversed.